CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 2 5 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID ALLEN DAY, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 7:07-cv-00376 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Hon. James C. Turk |
| ) | Senior United States District Judge |
| Respondent. ) | |

David Allen Day ("Day"), a federal inmate proceeding through counsel, brings this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Day claims that his retained attorney, who was disqualified from the case before trial, deprived him of his right to the effective assistance of counsel. Respondent filed a motion to dismiss, and counsel for petitioner responded. For the foregoing reasons, the court finds that Day's claims lack merit and concludes that the motion to dismiss must be granted.[1]

I

A federal grand jury returned a two-count indictment against Day on August 16, 2002, charging him with conspiracy to distribute, and possession with the intent to distribute, 500 grams

---

[1] Respondent asserts that Day's petition should be dismissed as untimely under § 2255 para. 6(1). This subsection requires that a § 2255 petition be filed within one year from the date on which the conviction becomes final. Petitioner's direct appeal was denied by the United States Court of Appeals for the Fourth Circuit on May 9, 2006, and Day's conviction became final ninety days later on August 7, 2006, when his time to file a petition for writ of certiorari expired. See United State v. Sosa, 364 F.3d 507, 509 (4th Cir. 2004). Accordingly, Day had until August 7, 2007, to file a § 2255 petition challenging his conviction and sentence. Respondent contends that Day did not file his petition until August 8, 2007. The record does not support this claim, however. The petition and counsel's cover letter were both stamped as filed on August 6, 2007, by a deputy clerk in the court's Harrisonburg Division. Accordingly, the court finds that Day filed his petition within the requisite time-period.

or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846 (Count One) and seeking the forfeiture of two real properties owned by petitioner as drug related assets (Count Two). On December 12, 2002, Day, Hollis Clay Merica ("Merica"), and Gregory Scott Shifflett ("Shifflett") were charged in a nine-count superseding indictment. Day was charged with conspiracy to possess with the intent to distribute and to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841 and 846 (Count One); possession of a firearm in furtherance of the underlying conspiracy as set forth in Count One, in violation of 18 U.S.C. § 924(c) (Count Two); possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841, on February 14, 2002 (Count Three); possession of a firearm after having been convicted of a crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9) (Count Four);[2] possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841, on February 7, 2002 (Count Five); and possession of a firearm during and in relation to the Count Five charge of possession with intent to distribute, in violation of 18 U.S.C. § 924(c) (Count Six).[3] Counts Eight and Nine, against Day only, sought the criminal forfeiture of property and firearms as drug related assets, pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 924(d)(1).

---

[2] Count Four alleged that the predicate offense for Count Four was a 1997 conviction in the Juvenile and Domestic Relations District Court for Staunton, Virginia, for a domestic assault.

[3] Merica and Shifflett were also named as defendants in Counts One, Five, and Six. Count Seven named only Shifflett.

The evidence in the case as adduced at trial indicated that Day was a user and dealer of methamphetamine in Rockingham County, Virginia, for several years before his arrest for the 2002 conduct charged in this case. Co-defendant Merica testified that he, Shifflett and Day traveled to New Orleans, Louisiana, in February 2002 with plans to attend Mardi Gras activities. Driving a van registered to Day, the three men left Virginia on February 2, 2002, and were pulled over by Alabama state troopers the next day for a lane violation. Shifflett was driving, Merica was in the front passenger seat, and Day was in the back seat behind him. Police searched the van and found 59 grams of methamphetamine, some marijuana, a .380 caliber pistol, and approximately $5,000 in cash. A week later, on February 14, 2002, police executed a search warrant at Day's residence and seized, among other things, approximately 86 grams of methamphetamine, four firearms, digital scales, three false bottom cans, and other paraphernalia associated with manufacture and packaging of methamphetamine.

Merica and Shifflett each pleaded guilty to a reduced number of charges, pursuant to plea agreements. Day retained Walter Green ("Green"), Esq., and pleaded not guilty. On May 6, 2003, the prosecutor filed, under seal, a Motion to Inquire whether Green had a potential conflict of interest. The court heard arguments on the conflict issue during a hearing on May 16, 2003. The prosecutor elicited testimony indicating that Green had previously represented Christopher Clem and Robert Herring in other methamphetamine trafficking cases and that both Clem and Herring had provided authorities with information as to Day's drug activities. The prosecutor stated his intention to call both men as witnesses against Day in this case. The court determined that a conflict of interest did indeed exist and removed Green as counsel for Day. The court then appointed Gregory Bowman, Esq. ("Bowman"), to represent Day. On October 3, 2003, Day filed a pro se motion,

3

requesting that Green be reappointed as counsel. Day claimed that Bowman had not prepared effectively for trial and had encouraged Day to plead guilty. He asserted that the only evidence against him was testimony from people in jail or those threatened with jail and that all the law enforcement agents were "liars and drunks." He stated, "If I . . . let [Bowman] represent me I will look like the most unprepared idiot ever to go into court." He further argued, "I should be able to at least pick a lawyer who is not going to want me to plead guilty when I do not want to." After conducting a hearing on October 15, 2003, the court granted Bowman's separate motion to withdraw as counsel, but denied Day's motion to appoint Green, based on its prior finding that conflicts of interest precluded Green from representing Day.

The court then appointed David McCaskey, Esq., ("McCaskey") to represent Day. In a letter to Day, dated January 12, 2004, McCaskey reviewed his previous conversations with Day about the case. (Resp't Mot. Dismiss, Ex. 5) McCaskey advised Day that after reviewing the discovery material, it was his opinion that Day would likely be convicted of all charges, which would result in the equivalent of a life sentence. McCaskey reminded Day that they had discussed the possibility of a plea bargain for fifteen years on the drug conspiracy, plus five years on one of the firearm charges, with no contest of the forfeitures, or a plea entered in conjunction with Day's testimony against another drug dealer. McCaskey also advised Day that if he did plead guilty and make a proffer of information to the government, the interview would likely include questions about Green's possible involvement with cocaine and methamphetamine. McCaskey concluded his letter by noting that Day had not contacted him concerning the guilty plea possibilities, although the attorney had given him all three of his telephone numbers and had left messages at two places for Day. Thus, McCaskey stated his assumption that Day wished to proceed to trial on January 29, 2004.

4

Also on January 12, 2004, Day's sister and bondsman, Linda S. Reese, filed a memo with the court requesting a hearing to express her concerns that McCaskey was not adequately representing Day's interests. (Resp't Mot. Dismiss, Ex. 6 at 1.) On January 21, 2004, Day himself filed a pro se motion for appointment of new counsel, claiming that McCaskey did not "fully believe in his innocence," and accordingly, could not "adequately represent" him. (Resp't Mot. Dismiss, Ex. 7) On January 26, 2004, McCaskey filed a motion for leave to withdraw as counsel, noting that Day had not been "cooperative in the preparation of [the] case" and that a "trusted family member" was firmly opposed to the representation. (Resp't Mot. Dismiss, Ex. 8) After a January 29, 2004 hearing, the court granted McCaskey's motion to withdraw. Rather than simply appointing another attorney for Day, the court permitted Day to select an attorney from the court's list of eligible counsel. Day selected Aaron Cook, Esq. Because Cook had a conflict, however, the court appointed Richard Davis, Esq. ("Davis"). Davis represented Day during the subsequent motion to suppress, at trial and sentencing, and on appeal. The court conducted a jury trial, April 14-20, 2004, and jurors found Day guilty on all Counts. The jury also found that the real properties and firearms listed in the forfeiture counts were related to Day's drug trafficking activities and that they, along with $750,000 in drug proceeds, should be forfeited.

Davis, on behalf of Day, filed a motion for acquittal, or in the alternative, downward departure, and also filed written objections to the presentence report ("PSR"). Davis argued that the probation officer held Day accountable for too large a quantity of drugs and asserted that misconduct by Green throughout the case provided grounds for a downward departure from the guidelines sentencing range. The court heard argument on these issues during the sentencing hearing on September 16, 2004. The court denied petitioner's motion for acquittal, noting "I have no question

at all but what there is sufficient evidence for the jury to have found as they did." (Sent. Tr. 9) The court then allowed Day to make a statement about Green's alleged misconduct. (Sent. Tr. 13-15) Day testified that after the court removed him as Day's attorney, Green told Day that he should not cooperate with anybody or tell anybody anything about his case; that Day was not going to jail; that he (Green) would not give back any of the money Day and his family had paid for the representation; that Day should not believe anything he was told by the court-appointed attorneys, because the prosecution "had something" on each of them; and that even after the jury verdict, he (Green) would get him (Day) out of jail.[4] Day further claimed to have provided information to Green which would have helped Day, including information about a methamphetamine lab. The court ultimately found no grounds to support a downward departure based on Green's conduct and while expressing reluctance, imposed sentences totaling 481 months imprisonment.[5] On May 9, 2006, the United States Court of Appeals for the Fourth Circuit affirmed Day's convictions and sentences.

In his § 2255 motion, Day asserts that "Green's misconduct and continued interference in the attorney-client relationship violated Day's right to the effective assistance of counsel." Day argues that Green continually pushed him to make the unwise strategic choice of going to trial by promising that Day would not go to jail and by undermining Day's confidence in his court-appointed counsel.

---

[4] In the written objections to the PSR, Davis also states that Green took a "fixed fee" of more than $80,000 for representing Day in this case, never gave an accounting of his time and the monies spent up to the time of his removal, and told Day that "he would be his lawyer to the end." Davis also asserts that after the court removed him from the case, Green prepared "pro se" pleadings for Day to file to request removal of court-appointed counsel, that Green told Day not to listen to other counsel's advice regarding plea negotiations, that the government had no case against him (Day), that he (Green) would help Day prove that the police lied and planted evidence and certain law enforcement witnesses would not testify against Day, and that Day would not go to jail.

[5] Pursuant to the jury's verdict, the court also issued a Final Order of Forfeiture as to the real property, firearms, and $750,000 in drug proceeds.

6

Case 7:07-cv-00376-MFU-RSB  Document 12  Filed 01/25/08  Page 6 of 13  Pageid#: 244

According to Day, Green's actions were motivated by two conflicting interests: (a) by his representation of cooperating witnesses in the case and (b) by Green's intention to keep the entire retainer fee paid to him by Day's family, even though he was removed as Day's attorney almost a year before the trial, before doing any substantial work in preparing a defense case.[6]

II

The Sixth Amendment mandates that an accused person have the assistance of an attorney sufficiently competent to fulfill the role of counsel in the adversarial system as necessary to ensure a fair trial. Strickland v. Washington, 466 U.S. 668, 685 (1984). To prove that counsel's assistance at trial or sentencing or on appeal was so defective as to require reversal of his conviction or sentence, petitioner must meet a two-prong standard, showing (a) counsel's defective performance and (b) resulting prejudice. Id. at 687. First, petitioner must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687-88. Petitioner must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 689. Second, to show prejudice, petitioner must demonstrate "a reasonable probability" that but for counsel's errors, the result reached by a reasonable and impartial fact finder

---

[6] Day provides evidence that Green faces criminal charges of prescription drug fraud and that after Green's participation in Day's case, the Supreme Court of Virginia suspended Green from the practice of law for six months, based on evidence that Green had failed to return prepaid legal fee balances to other clients. This evidence has no bearing on whether or not Day received effective assistance of counsel in the case before the court.
However, Day or his family may be able to recover from Green an appropriate portion of the retainer fee paid to the attorney, since he was unable to complete the representation for which he was hired. If there is a dispute about this matter, the family may contact the Virginia State Bar for assistance, at 804/775-0570 (toll free 866/548-0873).

would have been different. Id. at 694-95. If it is clear that petitioner has not satisfied one prong of the Strickland test, the court need not inquire whether he has satisfied the other prong. Id. at 697.

When the trial court determines that defense counsel has a conflict of interest that will potentially affect his ability to serve the interests of the defendant, the court must take appropriate steps, including possibly removing the conflicted attorney from the case, to ensure that the defendant receives effective assistance of counsel. See Holloway v. Arkansas, 435 U.S. 475, 485 (1978) (citing courts that have held conflict of interest evidence to warrant appointment of new counsel). A habeas petitioner may demonstrate grounds for habeas relief if he shows that his defense counsel had an actual conflict of interest that adversely affected the lawyer's performance on petitioner's behalf. Cuyler v. Sullivan, 446 U.S. 335, 349 (1980). As prejudice is presumed in such circumstances, petitioner need not demonstrate prejudice under Strickland. Id. at 349-50. Specifically, petitioner must establish, by a preponderance of the evidence, (1) that a plausible alternative defense strategy existed that counsel might have pursued, a strategy that was objectively reasonable under the facts of the case known to counsel at the time of his tactical decision, and (2) that counsel's failure to pursue the alternative strategy was linked to a conflict of legal interests. Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001), aff'd 535 U.S. 162 (2002).

> An attorney has an actual conflict when he actively represents conflicting interests. [Cuyler], 446 U.S. at 350, 100 S. Ct. at 1719. His representation of conflicting interest, however, is not always as apparent as when he formally represents two parties who have hostile interests. He may harbor substantial personal interests which conflict with the clear objective of his representation of the client, or his continuing duty to former clients may interfere with his consideration of all facts and options for his current client. When the attorney is actively engaged in legal representation which requires him to account to two masters, an actual conflict exists when it can be shown that he took action on behalf of one. The effect of his action of necessity will adversely affect the appropriate defense of the other.

United States v. Tatum, 943 F.2d 370, 375-76 (4th Cir. 1991). Put another way, if petitioner can show that "but for the attorney's actual conflict of interest, there is a [reasonable] likelihood that counsel's performance somehow would have been different," he proves that the conflict had adverse impact. Stoia v. United States, 109 F.3d 392, 395 (7th Cir. 1997) (internal quotations and citations omitted). The two Cuyler requirements– actual conflict of interest and adverse effect– are often intertwined, thus causing an overlap in the factual analyses. Tatum, 943 F.2d at 375.

The constitutional right to effective assistance of counsel, however, is not the "right to receive good advice [or conflict-free advice] from every lawyer a criminal defendant consults about his case." United States v. Martini, 31 F.3d 781, 782 (9th Cir. 1994). The Constitution guarantees effective assistance only by the attorney "who represents the criminal defendant and helps to prepare his defense." Id. (citing Strickland, 466 U.S. at 687 (describing the inquiry as whether counsel was "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment")). When a defendant has received effective assistance of counsel from the lawyer functioning in the adversarial role of defense counsel to test the prosecution's case, that defendant "cannot later claim that he received ineffective assistance of counsel from another lawyer he [also] chose to consult." Id. at 782-83.

### III

Under these principles, Day fails to prove any ground on which he is entitled to habeas relief. His claims of ineffective assistance are based solely on the alleged actions and inactions of Green. He does not suggest that the attorneys appointed to represent him after Green's removal from the case were, themselves, ineffective in any way. On the contrary, he now wants the lesser sentence that he might have had if he had followed their advice to negotiate a plea bargain. Upon review of

the pleadings and the record, the court cannot find that Day's constitutional right to effective assistance of counsel was violated in this case.

The brief period while Green served as Day's retained attorney in the role of defense counsel before the court ended when the court removed Green from that role more than a year before the trial. Even if Day could prove his allegations that Green failed to interview witnesses or to offer a reasonable assessment of Day's chances at trial, he does not demonstrate, or even allege, that Green's actions prevented subsequent counsel from investigating the case or offering accurate estimates of the strength of the government's case. Even when counsel has provided misinformation on issues critical to the defense case, the defendant cannot show prejudice under Strickland when he received timely and accurate information on that same issue from the court or other counsel. See, e.g., United States v. Foster, 68 F.3d 86, 87-88 (4th Cir. 1995) (rejecting ineffective assistance claim based on counsel's alleged assurances that defendant would not be sentenced as a career offender, upon the court's finding that "any misinformation Foster may have received from his attorney was corrected by the trial court at the Rule 11 hearing, and thus Foster was not prejudiced."). Green cannot show prejudice under Strickland resulting from Green's actions before his disqualification, because he later received competent advice from his court-appointed counsel.

Green's actions after his removal cannot constitute defective performance under the Strickland standard, because then, Green had been disqualified from serving in the role of Day's counsel in the adversarial process. Day argues that Green's conduct before and after his disqualification by the court so tainted Day's own perceptions about the case and so undermined his confidence in later counsel that but for Green's actions, Day would have chosen a different way when offered a plea agreement and would thus have received fewer convictions and fewer months

10

of imprisonment. It is undisputed, however, that Day received competent advice from his conflict-free, court-appointed counsel. Professionally reasonable representation is all that the Constitution guarantees. Green's alleged misconduct could not and did not alter the quality of the advice Day's appointed counsel offered him so as to render it constitutionally deficient. Counsel offered reasonable advice, and Day rejected it. In all cases, the defendant must decide whether or not to plead guilty; once counsel informs him of the plea offer and describes its benefits and consequences as opposed to the likely outcomes at trial, the choice to plead or not rests with the defendant alone. See Jones v. Murray, 947 F.2d 1106, 1110-1111(4th Cir. 1991). That choice comes to the defendant as he is, whether educated or not, reasonable or not, allowing himself to be influenced by family members or other attorneys or not. Green's alleged conduct was unprofessional, irresponsible, and unethical, but it was no longer in any respect the conduct of Day's counsel, and it did not "cause" Day to decide against the plea agreement benefits described by his competent counsel. Only Day could and did make that choice. Day thus fails to show that Green's conduct meets either prong of the Strickland standard.

Day also argues that Green's conflicts of interest require analysis of his ineffective assistance claim under the Cuyler standard. He relies primarily on two decisions by the United States Court of Appeals for the Seventh Circuit in the Stoia cases. See United States v. Stoia, 22 F.3d 766 (7th Cir. 1994) (Stoia I); United States v. Stoia, 109 F.3d 392 (7th Cir. 1997) (Stoia II). The defendant, Samuel Stoia, hired four attorneys to defend him, with attorney Raymond Takiff as lead counsel. 22 F.3d at 767-68. In an unrelated case, Takiff had previously entered into a plea agreement with federal prosecutors in which he promised not to "represent individuals charged with crimes under investigation by the United States Attorney's office [or] any federal law enforcement authority." Id.

11

For this reason, Takiff did not serve as counsel of record or appear before the court in Stoia's case, despite his having been retained by Stoia. Id. In Stoia I, the Seventh Circuit held that retained counsel's "constitutional ineffectiveness can manifest itself at trial even though the attorney never appears in court" and remanded the case for conduct of an evidentiary hearing to determine whether Takiff had an actual conflict of interest that adversely affected the defendant's overall representation. 22 F.3d at 769-70.

Day's case is clearly distinguishable from Stoia's case. Neither the judge presiding over Stoia's trial nor the prosecutor in that case knew of Takiff's plea agreement, so no one sought his removal on conflict of interest grounds. Stoia II, 109 F.3d at 396. As Takiff remained in the role of defense counsel, his representation was subject to analysis under Cuyler and Strickland. In Day's case, on the contrary, the prosecutor argued long before trial that Green had conflicts of interest, the court disqualified Green from serving as Day's counsel, and appointed a succession of new, non-conflicted attorneys to serve in the role of defense counsel to test the prosecution's case against Day.[7] The fact that Green inexplicably continued to listen to Green does not cancel out the constitutional "fix" fashioned by the court in appointing new, conflict-free counsel in Green's place.

Moreover, after a hearing in Stoia's habeas case, the courts determined that although Takiff's plea agreement created an actual conflict of interest, that conflict did not cause any adverse effect on Stoia's defense representation. Id. at 398. The courts expressly rejected Stoia's argument that lead counsel's influence created an adverse effect on the defense as a whole by undermining petitioner's confidence in his non-conflicted counsel's advice. Id. The Seventh Circuit noted that

---

[7] None of the cases cited in support of Day's conflict of interest arguments involve attorneys whom the court had disqualified before trial on grounds of conflict of interest.

12

Stoia chose to hire four attorneys and "[had] only himself to blame for taking the advice of one of these lawyers (Takiff) over the advice of another." Id. Similarly, Day's court-appointed counsel offered him constitutionally sufficient representation, and Day himself chose to listen to others. Thus, any adverse influence that Day allowed Green as a private advisor to have on his own judgment after the court removed Green as his defense counsel falls outside the boundaries of this court's constitutional inquiry under Cuyler or Strickland and provides no ground for habeas relief. Accordingly, the court will grant the motion to dismiss. An appropriate order shall be issued this day.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to counsel of record for the parties.

ENTER: This 25th day of January, 2008.

*/s/ James C. Turk*
Senior United States District Judge

13